**HARRIS et al. v. MAYFIELD et al.**
(Nos. 440–3920.)

(Commission of Appeals of Texas, Section B. April 2, 1924.)

**1. Taxation ☞648—As against collateral attack, tax judgments on same plane as other judgments.**

Judgments in tax sale proceedings are as against collateral attack on the same plane as judgments in general.

**2. Taxation ☞684(1)—Return of order of tax sale not necessary to its validity.**

A return of the order of sale, following a tax sale by the sheriff or constable, is not necessary to the validity of the sale.

**3. Taxation ☞648—Prima facie case of valid title in tax sale purchaser held shown on collateral attack on tax judgment.**

Where collateral attack was made on a judgment foreclosing a tax lien held, that the judgment, the entries on the execution docket, and the sheriff's deed, made a prima facie case of a valid title in the tax sale purchaser, in view of Rev. St. art. 3782.

**4. Taxation ☞648—Inadequacy of bid at tax sale held not open on collateral attack on foreclosure proceeding.**

Where, on collateral attack made on a judgment foreclosing a tax lien, there was no showing of any fraud or irregularity in the sale or the proceedings leading up to it, an objection that the sale was made on a grossly inadequate bid was immaterial.

**5. Taxation ☞641—Wife not necessary party to tax suit to sell homestead.**

A tax debtor's wife is not a necessary party to a suit to foreclose a tax lien and to sell the property, notwithstanding that such property is homestead.

**6. Estoppel ☞97—Recital in deed held not estoppel in favor of one not party nor privy nor acting thereon.**

One cannot take advantage by way of estoppel of recitals in a deed to which one is not party nor privy, and where it has not been acted on to one's own disadvantage.

**7. Adverse possession ☞109—Limitation title not defeasible by gratuitous acknowledgment after its acquisition.**

Limitation title cannot be defeated by a mere gratuitous acknowledgment of its nonexistence taking place subsequent to its acquisition.

**8. Tenancy in common ☞15(7, 8)—Repudiation of title of cotenant held not shown so as to start limitations running.**

Where a husband and wife, and the wife after the husband's death, continuously lived on certain property as their homestead, rendering it for taxes, and a title under a sheriff's tax sale originated during such occupancy and 16 years before the end thereof, and either before or after the tax title arose the couple or one of them built a house, their children living with them, although not continuously, and within 10 years of the sheriff's sale the husband and wife, by reason of inheritance from persons claiming under the sheriff's sale, became tenants in common with two other persons also so claiming under the sheriff's sale, held that the 10 years' statute of limitations did not run against such other tenants in common, and in favor of the husband and wife; their title never having been repudiated.

**9. Judgment ☞452—Decree in partition voidable by those not joined, though necessary parties.**

Where persons owning undivided interests in land were not made parties to a partition suit, the decree therein was voidable by them and also by their successor in title.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Action by Lillie Harris and others against Mollie Mayfield and others. Judgment for defendants was affirmed by the Court of Civil Appeals (244 S. W. 857), and plaintiffs bring error. Reversed and remanded in accordance with the recommendation of the Commission of Appeals.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Y. D. Harrison and T. P. Young, both of Marshall, for plaintiffs in error.

Bibb & Caven, of Marshall, for defendants in error.

STAYTON, J. In 1901 William Harris and his wife, Clora, owned, as community property, a lot in the city of Marshall. Back taxes were due upon it. The city by suit and judgment foreclosed its tax lien; and, under a sheriff's sale and by mesne conveyances and the operation of the statute of descent and distribution, a daughter-in-law of the couple, Lillie Harris, acquired an undivided interest in the property.

After the sheriff's sale, William and Clora Harris continued to live upon the lot. William died. Clora, shortly before her death, conveyed to Mollie Mayfield an undivided interest in the property.

Mollie Mayfield then brought suit for partition, joining, as parties, all of the heirs of William and Clora. These were all of the parties that were necessary, if, after the sheriff's sale, this old couple, or either of them, were, by reason of invalidity of that sale, or by reason of limitation under the 10 years' statute, the owners of the lot. If, on the other hand, the sheriff's sale was valid, and limitation did not thereafter divest the title evidenced by it, a different case is presented. In that case, since all of the co-owners under the sheriff's sale were not made parties to the partition suit, such of them as were omitted were not bound by the decree in that suit.

This present action was brought by the daughter-in-law, Lillie Harris, who, after the attempted partition, had acquired some of the undivided interests of those holding under the sheriff's sale. These latter persons had not been parties to the partition suit. Upon that ground she sought to set aside the decree of partition and its incidents.

The defense of Mollie Mayfield and others claiming under the partition decree was that Lillie Harris' predecessors in title had never acquired any interest, because, in the first place, the sheriff's sale was void, and, in the second place, all persons claiming under it were barred by limitation. They also reconvened for title.

The trial court held with the defendants upon the first ground, and, on appeal, the Court of Civil Appeals was of the opinion that, while that basis for defendants' judgment could not be maintained, still the judgment was correct, because the evidence showed the accrual of limitation in behalf of William Harris and wife. The conclusion of the Court of Civil Appeals upon the validity of the sheriff's sale is considered to be correct.

In proof of that title, there were in evidence a final and entirely regular judgment of the district court against William Harris;

undisputed testimony that the execution was lost; the entries on the clerk's execution docket showing the issuance of order of sale under the judgment, and its delivery to the sheriff; and the sheriff's deed reciting the judgment, order of sale, "levy," sale, and facts showing, if true, that the proceedings succeeding the judgment were legal and regular. The deed was executed and recorded over 20 years before the suit. A subsequent deed under which defendant Mollie Mayfield claimed recited facts justifying the inference that those holding under the sheriff's sale had good title.

The basis of the trial court's holding, to the effect that such title was invalid, was that there was no evidence that the tax proceedings prior to the judgment were regular, nor that the order of sale issuing upon the judgment was ever returned.

[1] Judgments in such cases have, as against collateral attack, been definitely placed upon the same plane with judgments in general by the opinion of Justice Greenwood in Brown v. Bonougli, 111 Tex. 275, 232 S. W. 490. In that opinion the difference between official tax sales and sales after foreclosure of tax lien by suit and judgment was clearly stated, and it was decided that, as distinguished from the ordinary tax sale, such a judgment, regular on its face, presumes the regularity of its prerequisites. The attack upon the judgment in this case is collateral, as it was in that case.

[2] The other basis of the trial court's conclusion is likewise considered to be erroneous. That a return, which is designed to follow a sale by sheriff or constable, is not necessary to the validity of the sale is settled. Willis v. Smith, 66 Tex. 43, 17 S. W. 247. After title has vested in a purchaser at such a sale, it is not subject to being defeated by subsequent delinquencies on the part of the sheriff.

But the court's view is susceptible of the construction that, in the absence of a return, there was nothing to show the regularity of the proceedings that occurred between the judgment and the sheriff's deed. That question should be examined.

It must be conceded that the entries on the execution docket were, under the statute, competent evidence of what they showed on their face. R. S. art. 3782. In Schleicher v. Markward, 61 Tex. 102, it was said, upon the basis of this article:

"That the entries in these dockets shall be taken and deemed to be a record; and, * * * are of as much dignity as the execution itself."

The entries in the present instance showed that in this identical tax suit, and upon this identical judgment, and 42 days after the rendition of it, order of sale issued and was handed to the sheriff. If the clerk did his duty, he worded the order of sale as required by the judgment and the statutes,

and handed it for execution to the proper officer. The entries, moreover, showed, as stated, that it was handed to the sheriff. If the sheriff did his duty, he thereupon conducted the sale in legal manner. The deed is in regular form and shows to have been executed 58 days after the order of sale was issued. Whether the recitals in that and the other deed above mentioned were evidence need not be now stated. No presumptions of irregularity should be indulged. On the contrary, it should be presumed that these officers did their duty. In the case of Howard v. North, 5 Tex. 290, 51 Am. Dec. 769, where the proof was silent as to some of the important steps in an execution sale, the court said:

"The prima facie presumption is, that the officer discharged his duty, * * * according to the requisitions of the law. The presumption is in favor of the title, and will support it, unless rebutted by proof to the contrary."

To the same effect are White v. Jones, 67 Tex. 640, 4 S. W. 161; Sadler v. Anderson, 17 Tex. 252; Tompkins v. Creighton Co., 160 Fed. 303, 87 C. C. A. 427, in connection with which see Baker v. Coe. 20 Tex. 429; and Terry v. Cutler, 4 Tex. Civ. App. 570, 23 S. W. 539.

[3] On this collateral attack it must therefore be held that the judgment, the entries on the execution docket, and the sheriff's deed made a prima facie case of a valid title, in so far as the tax suit was concerned.

[4] There was no showing of any fraud or irregularity in the sale or the proceedings leading up to it. In view of this, the objection of the defendant Mollie Mayfield that the sale was made upon, what she states, was a grossly inadequate bid becomes immaterial. Allen v. Pierson, 60 Tex. 604; Allen v. Stephanes, 18 Tex. 672; Jones v. Pratt, 77 Tex. 210, 13 S. W. 887; First National Bank v. South Beaumont Land, etc., Co., 60 Tex. Civ. App. 315, 128 S. W. 436. There is no evidence or finding, however, that the bid in the present instance was inadequate.

[5] Notwithstanding the property was homestead, the wife was not a necessary party to the tax suit, because homestead could not have been a defense to it. Cooley v. Miller (Tex. Com. App.) 228 S. W. 1085.

For the reasons discussed, it is considered that the title left William Harris and his wife at least by the date upon which the sheriff's deed was filed for record, July 27, 1901.

The next question in the case is whether this couple, or either of them, acquired title after that date under the 10 years' statute of limitation. There was no proof of such payment of taxes as is required under the 5 years' statute. The testimony upon the issue of limitation is entirely undisputed, and does not conflict with any finding of fact below.

William and Clora Harris acquired the property in William's name November 20, 1885. It was within the city of Marshall, and its dimensions were 111x118.65 feet. Fifteen years later (July 3, 1901) the deed was delivered to the purchaser at the sheriff's sale. Less than 8 years after that William Harris died (1907 or 1908), leaving his wife and three children as his heirs, and 9 or 10 years after William's death Clora died (1917).

At some indefinite date before or after the sheriff's sale, and prior to William's death, a dwelling house was built by the couple, or one of them, upon the lot, and they began to live on the place, and continued thenceforth to live upon it and claim it "as their home," and "as their homestead"; and Clora continued to claim and occupy it as her "home" after her husband's death and until her own death. Their three children lived with them before 1906, how continuously is not shown; and one of these children, a daughter, and her own minor daughter having died there, William and Clora continued to reside on the place with their remaining two children, who were sons. One of these sons and his wife lived on the place from time to time until Clora's death. During their occupancy William and Clora Harris rendered the property for taxation.

On June 5, 1905, within 4 years after the sheriff's sale, two of these children acquired the record title emanating from that sale. One of these was the daughter whose death about a year afterward cast inheritance of her undivided interest upon her minor child. The death of the latter, on the day following, vested title to this undivided interest in two people living upon the place—the old couple, William and Clora, and two people living elsewhere—the minor's paternal grandfather and uncle. It is the interests of these two latter persons that Lillie Harris, plaintiff in error, now owns.

In 1916, a year before her death, the widow, Clora, conveyed to Mollie Mayfield, defendant in this case, an undivided one-half interest in the property in controversy. The deed contained a recital which, interpreted in the light of the facts in the case, was to the effect that it was the same land "described" in the deed to her two children from the purchaser at the sheriff's sale, and, to quote, "being my part of the tract of land inherited by me from my daughter." This daughter and her death have already been mentioned.

[6, 7] What has been said covers all of the evidence upon the issue of limitation. Before the effect of this evidence as a whole is considered, it may be well to state that the recital just referred to, was not, as claimed by plaintiff, an estoppel in her behalf, because she was not party or privy to the deed, and did not act upon anything stated

in it to her own disadvantage; and it was not, as she further contends, evidence of a submission to another title at a time prior to its execution, because it did not undertake to narrate the nature of Clora's past claims, intention, or attitude, but was simply a statement of title, prima facie true, but speaking only upon the date upon which it was made, i. e., the date of the deed. Moreover, if limitation had already accrued in her behalf, the recital could not serve to destroy that title by acknowledging that it never existed; for limitation title, like all other sorts of title, cannot be defeated by a mere gratuitous acknowledgment that takes place subsequent to its acquisition. Illg v. Garcia, 92 Tex. 257, 47 S. W. 717; Bartell v. Kelsey (Tex. Civ. App.) 59 S. W. 633; Erickson v. Wiper, 33 N. D. 193, 157 N. W. 599; Wallace v. Pruitt, 1 Tex. Civ. App. 231, 20 S. W. 728; Morgan v. White, 50 Tex. Civ. App. 318, 110 S. W. 491; Cook's Co. v. Barnhart (Tex. Civ. App.) 147 S. W. 662.

[8] Recurring, however, to the effect of the evidence as a whole upon the issue of limitation: The strongest case that can be concluded from it in behalf of defendants in error who raise it is that William and Clora Harris, and Clora after William's death, continuously lived upon the property in controversy, claiming it as their homestead and rendering it for taxes; that the title under the sheriff's sale originated during this occupancy and 16 years before the end of it; that either before or after the latter title arose the couple, or one of them, built a house upon the lot; that all during their occupancy their children lived with them, but not continuously; that at such a point within the 16-year period as to be within 10 years of the sheriff's sale, Clora and William became tenants in common with two persons, as to whom the record is otherwise silent; that later still, and still within 10 years after the sheriff's sale, Clora, as to any interest of herself and William, became tenant in common, also, with her two sons; and that during the last year of her life she was claiming under the sheriff's sale title.

Whether these facts show that the title under the sheriff's sale became barred under the 10 years' statute in behalf of William and Clora Harris, or either of them, is the remaining question in the case.

Aside from any other considerations upon this question, it appears without dispute from the evidence already summarized that, at a time less than 10 years after the origin of the title against which limitation is now claimed, and consequently before there could have been any title under the 10 years' statute as against plaintiff in error or her vendors, the vendors of plaintiff in error became tenants in common with William and Clora Harris, and, on the death of William, continued as such with Clora and her sons until Clora died. These predecessors of plaintiff in error had a right to presume that the possession of their tenants in common was not adverse to them but was in the common interest. Notice of adverse claim was not shown to have been actually brought home to them. Mere rendition of taxes, and erection of a dwelling, even had there been evidence that the dwelling was erected during this period, would not have effected such notice. There was no showing that an adverse claim by the tenants in common, who were in possession, was notorious. Under circumstances like these it has been uniformly held that limitation title cannot run against the tenants in common who happen to be actually out of possession, because adverse holding by their cotenants is absent. They are held never to have had a cause of action against their cotenants, because it is not shown that their title was ever repudiated. There would be no cause of action for limitation to bar. Consequently, under the evidence in this case, the right of the tenants in common and their vendee to bring suit upon their title or to assert it was never barred. Phillipson v. Flynn, 83 Tex. 580, 19 S. W. 136; Stiles v. Hawkins (Tex. Com. App.) 207 S. W. 95; Portis v. Hill, 3 Tex. 279; Alexander v. Kennedy, 19 Tex. 488, 70 Am. Dec. 358; Gilkey v. Peeler, 22 Tex. 663; Deaton v. Rush (Tex. Com. App.) 252 S. W. 1025.

In the case of Gilkey v. Peeler, above cited, acts of ownership were held not to constitute the assertion of an adverse claim as against a cotenant; and in Phillipson v. Flynn, also above cited, the court ruled the present question and the burden of proof upon it as follows:

"The possession of a cotenant or tenant in common will be presumed to be in right of the common title. He will not be permitted to claim the protection of the statute of limitations, unless it clearly appears that he has repudiated the title of his cotenant and is holding adversely to it. Possession and payment of taxes on the property do not constitute the assertion of an adverse right. There must be something more. Alexander v. Kennedy, 19 Tex. 496. The acts relied upon by the tenant in common in showing an ouster of his cotenants and the assertion of an adverse claim should be more certain and unequivocal in character than would be necessary in ordinary cases where there is no privity of estate between the parties claiming the property; and in order to affect the cotenants with this adverse holding notice of such fact must be brought home to them, either by information to this effect given by the tenant in common asserting the adverse right; or by such acts of unequivocal notoriety in the assertion of such adverse and hostile claim that they will be presumed to have notice of such adverse right. Moody v. Butler, 63 Tex. 210; Wood on Lim., § 266. Whatever must be shown in establishing an ouster and an adverse right by limitation must be proved by the tenant in common asserting such facts."

[9] At the time that Clora Harris' vendee, that is, defendant in error Mollie Mayfield, brought her partition suit, the property in controversy was not owned alone by the heirs of Clora Harris, but, as has been concluded, an undivided .interest was owned by the paternal grandfather and uncle of her. deceased granddaughter. These two persons were not parties to the partition suit or decree. It was therefore an inconclusive and "empty decree," and, for that reason, was voidable on their part. Holloway v. McIlhenny, 77 Tex. 659, 14 S. W. 240; Maverick v. Burney, 88 Tex. 560, 32 S. W. 512; House v. Brent, 69 Tex. 29, 7 S. W. 65. And, if voidable by them, it was voidable on the part of their successor in title, Lillie Harris. The trial court in this case, however, upon another ground already discussed and concluded to be incorrect, denied the latter party relief, and. by judgment, vested the title in the defendants.

We recommend that the judgments of the district court and of the Court of Civil Appeals be reversed, and that the cause be remanded to the district court for a new trial.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court. .

We approve the holding of the Commission of Appeals on the question discussed in its opinion.